**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**STEVEN B.,**[1]

Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

Defendant.

Civ. No. 6:19-cv-00677-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Steven B. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is REVERSED and REMANDED for further proceedings.

**BACKGROUND**

On November 19, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on January 1, 1998, which Plaintiff later amended to disability beginning on March 1, 2007. Tr. 13. The application was denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on August 2, 2017. *Id.* On March 16, 2018, the ALJ issued a decision finding Plaintiff not disabled. Tr. 19. On March 11, 2019, the Appeals Council

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

**DISABILITY ANALYSIS**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of March 1, 2007 through his date-last-insured of September 30, 2012. Tr. 15.

At step two, the ALJ found that Plaintiff had the following medically determinable impairments: migraine headaches, status post-traumatic brain injury; polysubstance abuse; left ankle fracture; tinnitus; lumbar spine degenerative disc disease; cervical spine degenerative disc disease; degenerative joint disease; right ulnar neuropathy; left carpal tunnel syndrome; right hearing loss; right wrist degenerative joint disease; bipolar disorder; and major depressive disorder. Tr. 15. However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform work-related activities for 12 consecutive months and that Plaintiff therefore did not have a severe impairment or combination of impairments. Tr. 15-16. Accordingly, the ALJ determined that Plaintiff was not disabled at step two of the sequential analysis and did not reach the remaining steps. Tr. 16-19.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

**DISCUSSION**

Plaintiff asserts the ALJ erred by concluding that Plaintiff did not have a severe impairment at step two of the sequential analysis. At step two, a claimant is not disabled if the ALJ determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r*, 454 F.3d 1050, 1052 (9th Cir. 2006). "A severe impairment 'significantly limits' a claimant's 'physical or mental ability to do basic work activities.'" *Trinity N.S. v. Comm'r*, Case No. 3:19-cv-01282-AC, 2021 WL 2386114, at *2 (D. Or. June 10, 2021) (quoting 20 C.F.R. § 404.1521(a)). "A diagnosis alone does not establish the severity of an impairment." *Cindy F. v. Berryhill*, 367 F. Supp.3d 1195, 1207 (D. Or. 2019) (citing *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). Nevertheless, an impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation marks and citation omitted, emphasis in original). "The 'ability to do basic work activities' is defined as 'the abilities and aptitudes necessary to do most jobs.'" *Id.* (quoting 20 C.F.R. § 404.1521(b)).

Step two of the sequential analysis is "merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017); *see also Webb*, 433 F.3d at 687 (noting that step two "is a de minimis screening device used to dispose of groundless claims,") (internal quotation marks and citation omitted, alterations normalized). However, the claimant "bears the burden of establishing that she has a severe impairment by providing medical evidence." *Cindy F.*, 367 F. Supp.3d at 1207.

In this case, Plaintiff's assignment of error concerns Plaintiff's right ulnar neuropathy. As previously noted, the ALJ found this condition to be medically determinable, but not severe. Tr. 15-16. In making this determination, the ALJ considered Plaintiff's subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Colvin*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements

concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

During the hearing in this case, Plaintiff testified that he was unable to hold a 12-ounce can of soda with his right hand and that he would occasionally drop things being held in that hand. Tr. 59-60. Plaintiff testified that he could barely write with his right hand and that the problem had been increasing in severity for 15 years until 2007 when the condition progressed to the point where he could no longer work. Tr. 60. When questioned on the significant gaps in his treatment history, Plaintiff testified that he "gave up" on seeking medical care in the relevant period. Tr. 65-66.

The ALJ concluded that Plaintiff's "medically determinable impairments could not have been reasonably expected to produce the alleged symptoms," and "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record[.]" Tr. 17. With respect to Plaintiff's wrist, the ALJ considered records from July 2010 showing mild arthritis in his right wrist, Tr. 18, 563, and showing that Plaintiff underwent surgical decompression of his right ulnar nerve in May 2011 with subsequent records showing improvement. Tr. 18, 886. Post-surgery treatment notes were positive and indicated that no follow-up was required. Tr. 732. The ALJ noted that Plaintiff gave inconsistent reports to his treatment providers during the relevant period concerning not only the severity of his right ulnar neuropathy, but even the existence of that condition. Tr. 17. In March 2007, shortly after the alleged onset date, Plaintiff told a treatment provider that he "has no physical health problems except seasonal allergies." Tr. 268. And during an examination in May 2007, Plaintiff "denie[d] any ongoing medical concerns." Tr. 882. As noted, an ALJ may properly consider inconsistent statements in assessing a plaintiff's credibility. *Ghanim*, 763 F.3d at 1163.

However, Plaintiff has pointed to additional records indicating that he suffered from limitations stemming from his right ulnar neuropathy during the relevant period. *See, e.g.*, Tr. 296 (November 2009, noting ulnar issues but deferring treatment until Plaintiff "is in a more controlled situation,"), 799-800 (July 2010, noting severe compression of the ulnar nerve and suggesting decompression surgery "to alleviate the pain and numbness you are experiencing as a result of this nerve compression,"). In January 2012, shortly before the date-last-insured, Plaintiff contacted his medical providers and reported that, although his right ulnar neuropathy had improved following surgery, it had become "abruptly worse" and requested re-evaluation. Tr. 559. Treatment notes from June 2012 indicate that Plaintiff continued to experience right ulnar neuropathy even after the surgery. Tr. 706.

After review of the record, the Court shares the ALJ's concerns, expressed during the hearing, about the paucity of medical records concerning Plaintiff's right ulnar neuropathy during the relevant period. Nevertheless, the Court concludes that what medical evidence exists is sufficient meet the de minimis screening threshold at step two. *See Webb*, 433 F.3d at 688 ("There is not, in this instance, the *total absence of objective evidence of severe medical impairment* . . .") (emphasis added). This is *not* to say that the ALJ's credibility analysis was erroneous or that the full record will support Plaintiff's claim of disability. Rather, the Court concludes only that the record does not demonstrate the "total absence of objective evidence" of a severe impairment and the ALJ should have "continued the sequential analysis beyond step two because there was not substantial evidence to show that [the plaintiff's] claim was groundless." *Id.* (internal quotation marks and citation omitted). In sum, the Court concludes that a remand for further administrative proceedings is necessary. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for further proceedings. On remand, the ALJ should reassess whether Plaintiff's right ulnar neuropathy meets the standard for a severe impairment at step two of the sequential analysis. If that condition does meet the relevant standard, the ALJ should proceed to the remaining steps of the sequential analysis.

It is so ORDERED and DATED this 8th day of February 2022.

/s/Ann Aiken
ANN AIKEN
United States District Judge